Our first case on the call of the docket today, Wednesday, March 21st, 2012, is agenda number 10, case number 112792, Mary Ellen McGrath. Let me do this again. Martin Gibbons McGrath, appellant, versus Mary Ellen McGrath, appellee. Is the appellant ready to proceed? Please. Paul Feinstein Good morning, justices, counsel. May it please the court, my name is Paul Feinstein, and I am pleased to be here representing the appellant Martin McGrath in a post-judgment dissolution of marriage case. Justices, a number of years ago, this court wrote an important opinion in family law called Rogers, in which the interpretation of the child support statute, specifically section 505, was discussed. In that particular case, the issue was whether or not gifts that the payor father regularly received was income, and this court held that anything that is received, whether taxable or not, is income. If it comes in, if it's a gain, if it increases his wealth. And as far as family law in Illinois was concerned, that seemed fine. But what's the reason that we're here today is that some of the appellate courts and some of the trial courts have, in my opinion, gone off track in terms of their interpretation of Rogers. This is an opportunity for this court to get everybody back on track so that, in particular, as matrimonial lawyers, we can advise our clients with a bit more certainty, understanding what is and what is not income. Because it's so crucial for child support cases because the first thing that must be done under the statute is to determine the payor's income. Sometimes it's relatively simple and sometimes it's not. If you have someone who's a W-2 employee, that's fine. You get a Rogers-type situation where there are other things and interpretation comes in. This particular case is a question of law from the First District. It's a question of whether my client, Martin McGrath's assets that he was awarded in his divorce case and subsequently spent to pay for his own expenses as well as child expenses, $1,600 a month agreed court-ordered expenses for the guidelines and the operation of the statute. Again, the key in the difference between Rogers and what happened in this case is in Rogers, whether taxable or not, if it comes in, it's income. We understand that. That's not a problem. But in this case, it was not money that came in. It was money that the client, Martin McGrath's assets that he was awarded in his divorce case and subsequently spent to pay for his own expenses as well as child expenses. Let's talk about that, Mr. Feinstein. If this Court agrees with you that savings account withdrawals should not be included in net income, that is your position. Right. So let's look at that for a minute. So wouldn't you concede that the trial court would be well within its discretion to find that 28% of Martin's net income is $48.07 and that this amount is inappropriate and should be adjusted upward based on Martin's resources, where it then gets us back to this savings account? Well, I disagree with the ultimate conclusion, Your Honor. Yes, the 28% applying the statute as it's supposed to be applied would be $48. But as Mrs. McGrath has sort of taken that position, that's all my client wants to pay. That's not the case because it can't be taken in a vacuum. In the agreement, he's already paying $1,600 a month in addition to many other things voluntarily. So the result, ultimately, if you apply the guidelines, it's $1,600 plus $50. And that's money that either, if it doesn't go directly into Mrs. McGrath's pocket, it defrays an expense, which is just as much a benefit to her. Well, the same question applies, though, doesn't it? If the $1,600 plus $50 is not enough in the Court's opinion, can that Court in its discretion take into account the savings account? It can in its discretion, certainly, Justice, in determining to exceed the guidelines. But the problem that we have with the operation of this statute is, if we're going to give trial courts such discretion, because essentially, one could say, well, the Court can make any decision. And if it's a reasonable, it's going to be affirmed, because abuse of discretion, we know, is a deferential standard. But first, the statute has to be properly applied. De novo. That didn't happen. It didn't happen in the past. It didn't happen here. We can't undo the process that the trial judge did. Had the trial judge done it differently, maybe there would not have been an appeal. But when she starts by saying, this is his income, we're already off the track. So are we looking, so you're saying we're not looking, then, whether the trial court abused their discretion in coming up with the column of net income? I believe that the ruling, the legal ruling, tainted what happened thereafter, absolutely. Mr. Feinstein, why didn't the Court issue an order of child support at the dissolution of marriage? Was it because he was not employed? He was unemployed, yes. So if that's so, and he had no income, would that ruling have any bearing on our determination now? Well, as I said in the briefs, at the time of the judgment for dissolution, rather than a child support order, it was reserved, with the understanding that he wasn't, really, he wasn't earning any income at all. How did it come about that they had an agreed order of $1,600 a month that he paid? What was that for? That was in the judgment. Those were, right, there wasn't a direct payment of child support from Mrs. McGrath, from Mr. McGrath to Mrs. McGrath, but there was an obligation for him to share in these various other things, which the evidence showed came to $1,600 a month. But it didn't include any child support. It didn't include direct child support to Mrs. McGrath. That's right. And one of our points was there really wasn't any change of circumstances and the time when Mrs. McGrath filed her motion, as well, because Mr. McGrath had the same assets. They were awarded to him. He was awarded his portion of the estate. She was awarded her portion of the estate. The appellate court had a couple of fallacies. Number one is, again, that this money is not received. And so under all the case law, other than, I grant you, the Lindman and Eberhardt cases, which were IRA cases, which were IRA cases, no other case where money has come in has it been ruled to be income. If the father were the beneficiary of the trust and he had the ability to dip into the trust, the corpus, at will, would that be income? It could be under certain other decisions. Well, because, again, if the money, in terms of your question, Justice, it's when it's coming in. If he already had it, again, it's not money coming in. It's money that he already has. You're talking about if he receives money. He's the beneficiary of the trust and he can invade the corpus at will. Isn't that his money? But it's his money, but it's not income. It's no different from this situation where it's a savings account. It's his money. There's no question. It's not money that's coming in like income. Mr. Feinstein, let's go back to the taint of the appellate court opinion. Because of the analysis, basically, that the savings account was net income. What would prohibit this court from agreeing with you on that, reversing the appellate court on the analysis if we agree with you that the savings is not net income, and remanding to the trial court to make a determination under 505A2? That, Justice, is something you can certainly do. You can either do that, remand it to the trial court. You could vacate the decision and make a determination based on the guidelines. That's, you know, both of those are certainly within your power. I would just hope that you not affirm and set out a rule that spending is income, because that would be a rule for all cases that would have severe consequences, not only in this case, but in the others. If I may, the other fallacy of reasoning that the appellate court went through in its very short decision was it said that spending is not excluded from the appellate court. It's excluded from the definition of income. Well, nothing is excluded under the statute. It just says income. And it's an issue of case law to determine that, and based on your own decision, things that come in are income. Things that do not come in, and that's where we get to the O'Daniel case, and Baumgartner, and Tagler, and the new one, McLaughlin, and such. Those courts held that it was not income because he already had it, because it's not a gain. Mary Ellen, other than the Eberhardt and Linden cases, cites no cases for this proposition. In fact, the only non-IRA case where the money in question was found to be income was your own case of Rogers. And again, in that case, the funds were received, so it was properly income. Counsel, Mr. Feinstein, correct? Yes. You did file this new additional authority. It's McLaughlin, I think? Yes. But that's a maintenance case, isn't it? It is a maintenance case. But what's your point on that? Well, my point on that is, number one, that the same division, the 1st District, 2nd Division, that decided this case, McGrath, now said that IRA distributions are not income. They did the same analysis as has been done in other cases. And in fact, of the various IRA cases, Eberhardt, which was a 1st District case, and Linden on the one hand, and O'Daniel on the other hand, which was the case that I argued was the best reason, and they basically said, yes, O'Daniel really is best reasoned. Now, I grant you, they then attempted to distinguish this case on the basis that one was child support and one was maintenance. But the reasoning is what I find a little troubling. They said, well, there are strong public policy reasons to treat it differently or to enforce child support. First of all, we're talking about interpretation of a statute. If something is income, it's income. If it's not, it's not. So whether we're talking about for maintenance purposes or child support purposes or really any other purposes, that gets us off course again. The issue is, is it income? And secondly, there are substantial public policy promulgations in this state to protect spouses as well as children. The main ones that I thought of were, for example, under 505, you can get a judgment for a child support order. You can get interest. You can get liens. Well, Section 504 has those very same provisions for maintenance. You can get all of those. The income withholding statute, which is an important public policy, it makes it easier to collect support. That applies, Justices, not only to child support, but to maintenance. And most interestingly, I thought, the Non-Support Act not only covers child support, but maintenance. And, Justices, that's still criminal. It's still criminal not to support your spouse. So as I read this decision just last week, it made sense to me up to a point. But then when they said, well, McGrath doesn't apply. These other cases don't apply because it's child support and not maintenance. When you're looking at the statute, which is what we're doing here today, I don't see the difference. I see it as a positive point that this panel, or at least I think one of the Justices, Justice Harris was the same, one of the Justices who participated in McGrath said, right, O'Daniel really makes the most sense. Mr. Feinstein, at the time, child support was reserved, correct? Yes. Was that done by agreement? That was done by agreement. And was that done at the same time as when the allocations were made of the marital estate? It was. And the same time that the $1,600 a month in the direct pays were set out. There was the divorce. There were all those things. And then later, Mrs. McGrath filed the instant petition for an order of direct child support, which is what has us here today. Really, the result shouldn't differ. Looking at these other cases, looking at, for example, Tegeler and Baumgarten, where money came in, but it didn't increase the payor's wealth because it was a loan. He had to pay it back. So, for example, let's take another hypothetical. If Martin instead borrows money to pay these expenses and pays the expenses out of the borrowed money, I don't think there would be much question that, pursuant to those authorities and Rogers, that would be deemed not income. So the fact that he's paying it out of money he already have, there should be no difference to that. Trial court made a $8,300 a month error on his income, which, as I said, substantially impacted the ruling. I believe that the statutory interpretation of the trial court and the appellate court, quite frankly, I can't think of a better word but absurd. And absurdity is, of course, what we're supposed to avoid in dealing with these statutes. Essentially, the lower courts rewrote the statute in this case. As I've indicated, my client is certainly not attempting to avoid child support. The gentleman pays not only the $1,600 a month, but there was unrebutted evidence, he pays additional money voluntarily every month, several hundred dollars. He has joint custody as well, so he has to incur some of his expenses for his housing, also involve the children, because he has the children over there. So, in essence, what the trial court and the appellate court have done when they rule that spending is income, is that they, in essence, punish a child support payer. They punish him because to the extent he pays money for the children that he's ordered to do, that's considered income. So that increases his child support obligation. To the extent, then, that he voluntarily pays more things, toys and visits and whatever, as was in the evidence, he's punished for that because that bumps up his income as well. To the extent that he covers his own expenses, and the evidence was he had substantial medical expenses and the legal fees from this case. Again, that all bumps up his income. He's ordered to pay more child support. So he's really, he's punished for living, and he's punished for complying with the order. I believe that a ruling that spending money for one's own medical expenses, for example, and being taxed at the gross amount, 28 percent, would be a questioning on medical expenses stopped. Was it stopped at some point in the trial? The questioning? Yes, Justice. Why was it curtailed? There had been an issue. The judge believed that my client had essentially asserted a privilege having to do with the details of his condition. And the evidence was that he was not working, had not been working for several years. And then the trial judge essentially treated it as, again, somebody who has asset-based income. He said, okay, I'll give you that he's unemployed. Now let's talk about what we're going to do with support. But instead of, again, saying his income is 200 a month, and then let's apply the guidelines, he said his income is 8,500 a month, and then applied the guidelines the other way. I believe that the appellate court's ruling is bad law, not consistent with Rogers' definition of income. Another point of the consequence of ruling that spending is income is that, for example, the statute allows a deduction for one to deduct his own health insurance premiums. So of this 8,500 a month, 500 or so a month is health insurance premiums for my own client. The statute gives him the right to deduct it. But when you also call it income, you're not giving him the deduction because it's a wash. You're saying, okay, he has this 500 a month income, less the 500 a month expenses. There are also provisions in the statute allowing for deductions for reasonable expenses for the benefit of the children. Again, those are spending-oriented things, but you don't give a person the benefit of those if you're going to issue a ruling that spending is income. I'll otherwise stand on the brief unless the Court has any additional questions. I would ask for this Court to rule that money spent is not income for child support purposes and for vacation or reversal of the trial and appellate court rulings. Mr. McGrath really appreciates the time that Your Honors have given us, as do I. Thank you, Justice. Thank you. Thank you. Counsel for the appellee. Good morning, Justices. Good morning, Mr. Feinstein. Always a pleasure. My name is David Pasulka, and I represent the appellee, Mariella McGrath. It's an honor to be before you today, but before we go into statutory interpretation, and Mr. Feinstein and I have been involved in creating statutes, in repealing statutes, in modifying statutes, this is a case about a woman who has two children who needs help supporting them. That's what it's about. And I think if you look at the record, and I'll go into more detail, I think that the trial court was spot on on what the issue was. It's unfortunate that we got caught up in language of income, of asset-derived income, or calling an asset income. And I don't think that that was the intent of the trial court, and I don't think it was the intent of the appellate court. One fact that is very clear in this case is this trial court considered everything, considered the income, the assets, the spending habits. The thing that I found disingenuous was there's a basic premise here. The premise, and we've gone full route. We've gone to trial, motion to reconsider, appellate court, and now before the highest court in the state of Illinois. There's something wrong with the situation where a noncustodial parent doesn't work, has no reason for not working, lives a lavish lifestyle off his assets, yet pays no child support. My premise to your honors today. It sounds like, Mr. Pasolka, you are arguing, although I don't see a lot of it in the briefs, 505A2, that the court can use its discretion, like I talked to Mr. Feinstein about it. The court can use its discretion. But here's the problem I have with the appellate court's opinion. See if you can help me out with it. Because as much as you don't want to talk about net income, they did. And their quote was, there are no provisions in the act excluding Martin's monthly withdrawals from the definition net income. My question is, isn't it the word income itself that excludes Martin's monthly savings account withdrawals? That is, obviously, that's why we're here today. That's the issue I think that creates a seemingly conflict or at least a lack of clarification on the term of income. So why wouldn't we, since none of the definitions, including the definitions in Rogers, would include savings account withdrawals as income, why don't we reverse and remand to the trial court to make a determination based on 505A2? I think that's a wonderful suggestion, but I will say the reason why is because the court already did that. And I will go in, I can't stick with your question, but I will go into that in a little more detail. I think the trial court did that. I think the appellate court did that. I found it shocking that one of the complaints that Mr. McGrath has is that he's paying $800 a month in attorney's fees to defend against this action that was brought of him. It was clear at the time of the divorce she reserved the child support because she wanted to be divorced. She wanted to get this past her. She waited a year and then she filed and was met with the same controversy. And when Mr. McGrath lost at the hearing, was met with a motion to reconsider. And when he lost that, was met with an appeal to the appellate court. And when he lost that, petitioned your honors and grabbed on to that issue that you're asking about, the income, and saying this is the issue. I completely agree, except the court's already done that. The lower court has clearly already done that. And what I'm begging you to do today is to say Mrs. McGrath doesn't have to start the process all over again. Why do you think we took this case? I think you took this case because the question becomes if income, if your assets that you already have are income, when you take it out, then what about the wage earner who also has assets? Any money a wage earner spends, I assume, would also be income. So I believe that what your honor is saying is that the statute already provides a vehicle for it. But maybe not this vehicle. This is a name. This is nomenclature. This is form. And I'm saying Mrs. McGrath is begging not to put form over substance. Form may have to be corrected. This is the highest court in the land, and you're certainly the people to do it. Form may need to be corrected, but the substance already happened. The appellate court has included savings withdrawals under the definition of net income. You argue, and I think you're arguing here today, that the appellate court's holding would not apply to all cases and has limited cases with similar facts. To that I disagree. Either savings account withdrawals are income or they're not income. The appellate court says they are income. If we say that it is income, it's going to apply not only to this case, but every case that comes out after it. So my question remains the same for both of you. Why wouldn't we just reverse, remand, 505A2, employs a vehicle to say, hey, $47 and whatever it was, $48.07 isn't enough. We're going to look at his other assets, which includes the savings account, and we're going to come up with a number. And that's perfectly, perfectly logical. Well, I think that's the issue, but I'm suggesting one further step. The court already did consider all of those things under 505A2. They already did that. And it's clear in the record they already did that. Please don't make her have to go through it again. She already did that. Well, that may be true in substance, following up with what Justice Thomas has been asking you about. How do we avoid this sentence? And we conclude that the circuit court was correct to include as part of Martin's income the money he withdraws from his savings account. If we simply affirm, then we are saying that any withdrawal from anything is income, no matter what the trial court actually did. How do we avoid that? I would suggest to your honors, and I'm not, I think you have power to do whatever you think is the best thing to do and the most equitable thing to do, but I think that this court has the power to suggest that if this doesn't change the outcome, because what he spends is already in the statute. And you're asking us to make a determination whether the trial court abused its discretion in making this award and we are determining that we're not going to look at it as income. We're going to look at it as an asset. So basically aren't we making the first determination as to what's reasonable child support? Absolutely, in a sense. But in a sense to the degree that it is putting form over substance, then I think the opening should be left for the trial court to suggest that if we've already considered this, that you don't have to do the whole process all over again. And I don't know if it's possible for this honorable court to take that path. Well, hasn't the trial court heard all of the evidence? Would it not simply be a reversal or remand for the trial court to consider without determining that withdrawal is income under 505? The assets can be used to determine what's reasonable. You've simplified it for me. That's exactly what I'm asking for from Your Honor, and thank you. Counsel, is there any evidence in the record that the father was deliberately avoiding earning an income so that the withdrawals from savings should be deemed income? You've kind of inferred that there are some issues that might lead to that. Is there any evidence of that? Mr. McGrath has surprised me throughout this appellate process, throughout the motion to reconsider, because initially he said that he's unable to work because he has depression, and I believe he at that time, I believe he said he has other medical conditions. We sent subpoenas to two of his doctors, and he filed a motion to quash those subpoenas. Ultimately, at a hearing, the court agreed with him that we can't get that medical information. And then during the trial, during the motion to reconsider, during the appellate court process, during the petition for leave to appeal, he continuously says to you, I have medical conditions that the court didn't let me talk about. He's trying blatantly to use this as both a shield and a sword. He talks about, I have medical bills that I have to pay for my medical needs. It's shocking to me that he could make any mention of it, but he did it at each level. He tried to make as much mention as he could about his medical records, as his defense, while first blocking us from having that information. We had the doctors in the court. We had this argument before the court, and we were blocked. Is that what you mean by the court already considered this when the court made the original award? Considered his medical conditions? Correct. The court considered that he cannot raise his medical conditions since he was the one who said this shouldn't come into the record. Is that a part of the court's decision that the savings withdrawals ought to be considered income? I don't believe that it was. I don't believe. If I may, Judge Kennedy said the evidence established that he was, Mr. McGrath is unemployed as he was at the time of the judgment. He claims that he is unable to work, but he is unwilling to consent to discovery of the basis of his claim. Therefore, the court made no assessment of his employability and approached the issue not as one of a voluntary unemployed parent, but rather as a parent who uses assets as a substitution for income rather than seek employment. Now, I know she said asset-derived income, but in that statement she said it right. She said it exactly right. She uses assets. I'm sorry. The court used Martin's monthly expenditures to determine the amount of support which would be appropriate, but it's unclear from the record whether this figure is an appropriate one to use in deciding the amount of child support. Is that correct? That in and of itself would be, Your Honor. So his expenditures was the determination of how much from his assets? I don't believe so. What I believe happened, and I think the court used to determine how much the support should be taken into consideration. I think the court used all factors. I think the court used her income, her expenses, the expenses directly and indirectly related to the children, his assets and expenses just as the statute provided for. I think the court felt compelled to tell us what the statutory guidelines would be, and I think that's where the court came up with the income, but they tried to comply with the statute. We're going to deviate from the guidelines, but the statute says I have to tell you what a guideline support order is, and I believe, in my humble opinion in this particular case, she would have had to say there is no ability to determine statutory guidelines. We're deviating from the guidelines because we're using A2 as a method of deviating from the guidelines. I think that's where it got caught up, and I assure you when I read that portion or that portion of the appellate court opinion, I wasn't thrilled about it because I go back to a very basic premise. I just simply represent a lady who needs help supporting her two children. That's what I have. I understand that, Mr. Pasulka. Pasulka. Pasulka, I'm sorry. That's okay. In response to Justice Carmeier's question, I want to make sure I understand your position. I certainly understand your position that you think that the trial court did it right and they took all the factors into account, but as I heard your response to Justice Carmeier's question and some of the other questions that were asked here, is it a fair statement that you're not going to the mat in support of the appellate court analysis that said the savings withdrawals were income? That is a safe assumption, Your Honor. Okay. Thank you. Counsel, let me ask you this. Yes, Your Honor. We're here on the petition that was filed in July of 2008, I believe. Yes. So it required a change in circumstances from the time of the judgment to show that there was an income change. Did it not? I don't believe that it did. Well, what is the standard under the statute on a petition to modify a judgment to award additional support? I believe that the standard to, as you proposed it. Well, I'm asking you what it is. Well, I think because it was reserved, it never required a proof of a change in circumstances. So you believe that there is no change in circumstances at all? Well, the change in circumstances was one year had gone by that he didn't pay support and had no basis for why he was still unemployed at the time. Well, I mean, you gave me an answer. I just want to make sure I understand it. You're saying because it was reserved, the statutory standard of a change in circumstances you believe doesn't apply? Yes, Your Honor, and I believe it's also not properly before the court, but I do believe it does not apply. I believe that Mr. McGrath had the opportunity to go seek employment or to come clean as to why he wasn't getting employment. The other fact is that when we talk about all the extra money he was paying, these are common add-ons per statute, per case law. He was paying medical not covered by insurance, half of it. He was paying for daycare, half of it. He was paying for extracurricular activities, half of it. And in one of his comments, he talked about all that expense and how expensive it is. Well, I think he was arguing our side for a moment because, yes, because our client is paying half of all those same expenses and then paying for everything else that's not covered under those three categories of expenses. So he almost concedes the obvious. It's expensive to raise children, but yet he takes the position that, seriously, I should pay 40. Was he obligated under the agreement to pay half of those expenses? That was part of the agreement, and part of the very same paragraph of paying those expenses was that the issue of child support direct payments was reserved. So it was all part of the same thing at the time. We knew that each of them had received over a million dollars in assets from the divorce case. And, by the way, that was a judgment that incorporated a marital settlement agreement. That wasn't a trial of the case. He agreed to do that. Did her assets, did the amount that she received create income as his did? You know, I don't, I have, I think that question was put to me, and I have an issue as to the income, and I will concede that. But I also, you know, her income has come up a few times. While it is relevant by statute, if Mrs. McGrath made $50,000 and Mr. McGrath made $80,000, he'd pay guideline support. And if she made $100,000 and he still made $80,000, he'd pay guideline support. And if she made $150,000 and he made $80,000, under the normal circumstances, he'd still pay guideline support. So the direct impact of guideline support in considering her income is not really highly relevant as it is what a wage earner's income is for purposes of determining child support. It reminds me of a question. Same fax pattern you were talking about. He earns $80,000, and he's paying guideline support. Suppose he's also withdrawing money from his savings from the marital estate to have a better lifestyle. Is that still income? It's the obvious problem that I saw when I first read the opinion. It's the obvious problem I saw. And that's why I am not falling on any sword today. I'm simply trying to make it clear, which I think this Court is abundantly clear, that there's a form matter that has to be rectified or clarified if you deem that that's necessary. And there's a substance matter. And the substance matter is the real matter to Mrs. McGrath and her two children. Thank you, Your Honors. It has been an honor to be here. Thank you. Rebuttal? Yes, Your Honor. If I may, I just have a few points in rebuttal. Mr. Persolka started to talk about Mrs. McGrath's income, but we didn't get into real detail. The evidence was that the woman earned over $230,000 and had a surplus every month of some, I believe, ultimately it was $4,500 a month. She had tried to say in her disclosure statement that she had a shortfall of $1,900 a month, but she was impeached on cross-examination. It showed she ultimately had that. Now, the other thing, Justice, as you pointed out, what about her assets? What about her income? Under the ruling of the appellate court and the trial court, which deemed spent assets to be income, keep in mind she spends more than he does. And if you, to be consistent, you'd have to add that, another $120,000, so her income under what should have been the trial judge's analysis was $350,000 a year. And yet there's no indication in the record that the court took that into account in doing the small deviation that they did. Mr. Feinstein, would you be able to give us an answer to Justice Friedman's question of any of the assets that were awarded to your client, did those assets generate new income? The income, yes. What assets? The assets, there were some qualified assets. That, in fact, is what the trial court added to his income on the motion to reconsider. And what we refer to as, I think, the $171 a month, that's the income on the investment. That's why we get to the $50 a month guideline. That is his actual income under Rogers and under the statute. It's the income under the investment. So that's the answer to that question. What was the asset that was generating income? He had, I mean, it was the savings account. The savings account. He had, I think he had a number of them that were set forth in the marital settlement agreement. There were a number of different qualified and non-qualified assets that both parties received as their portion. So his income was, that was added to the $8,500 a month, which under the testimony even wasn't always $8,500 a month. I think under his last disclosure statement it was $7,500 a month. But be that as it may, we have the legal issue about that. And, again, in terms of the, I understand Mr. Pasolka and Mrs. McGrath's desire to avoid a rehearing, which is certainly a possibility if the court reverses and remands. My position was that I believe that the court can just vacate it and insert the guideline award, but obviously that's within the court's discretion. If there's going to be more litigation, there is. I take exception to counsel's statement or inference that Mr. McGrath in any way is being litigious. I mean, keep in mind they settled their divorce case. He agreed to pay those various, what Mr. Pasolka called add-ons, which regardless of how common or not they are, the point is at $1,600 a month that he is giving, that he is paying for the benefit of the child, but in this case it's being called income on top of it. Similarly, it's not that he's complaining that he had to spend legal fees to defend himself when she files the petition of the $800 a month. What he's complaining about is that that's considered income, and that adds in to make the $8,500 a month. Mr. McGrath appealed to the appellate court because in our assessment the trial court was wrong. That's why I filed a motion to reconsider when I came into the case to try and write the issue right then, and I addressed it head on with Lindman and O'Daniel and all those other cases, and the trial court ruled. The trial court apparently felt that since Eberhardt was a First District case, that she was bound by that. And we took our appeal, as it were, and the appellate court made its ruling, which with all due respect I believe was erroneous as a matter of law, and that's why we're here. And, Justice, the fact that you did grant the petition for leave indicates there is room for debate here and some legal issues, unless the court has any questions. Again, as with Mr. Pasolka, and it's an honor to be in case with him. We've had many cases over the years. I believe he's one of the top people in our field, and I always appreciate this is my third time arguing before this court, and it's always an honor and a privilege. Thank you. To both counsel, thank you for your arguments today. Case number 112792, McGrath v. McGrath, is taken under advisement as agenda number 10. Thank you.